IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| EDWARD DOVE | : | |
| | : | |
| v. | : | Civil Action No. DKC 19-3001 |
| | : | |
| AMCO INSURANCE COMPANY, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this commercial auto insurance case are a motion for summary judgment filed by Defendant AMCO Insurance Company ("AMCO") (ECF No. 45), and a cross-motion for summary judgment filed by Plaintiff Edward Dove. (ECF No. 46).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, AMCO's motion for summary judgment will be granted and Plaintiff's motion will be denied.  An appropriate declaration will be entered.

## I.  Background

Plaintiff Edward Dove is a resident of Montgomery County, Maryland.  On September 27, 2017, just before 2 a.m., he was struck and seriously injured by a motor vehicle operated by Candice Thompson.  At the time, he was standing and working within a construction zone on Pennsylvania Avenue (Route 4) near Walters Lane in the Forestville area of Prince George's County, Maryland.

As part of his work contract, Mr. Dove had several "Jersey barriers" loaded onto his 2009 Peterbilt Tractor Style F truck ("the Peterbilt") to move them from that worksite to a maintenance yard.  The Peterbilt was insured by Great West Insurance Company ("Great West") for up to $75,000 in uninsured/underinsured motorist coverage via Policy MCP32004A.  Mr. Dove, however, also owned two dump trucks, one of which, a 1995 Ford LT 9000 (the "Dump Truck"), was insured with AMCO via Policy ACP BAA 30-0-7936233 for up to $1,000,000 uninsured/underinsured motorist ("UIM")[1] coverage.  He also owned GTC Motor Carrier, LLC ("GTC") that itself owned the flatbed trailer hitched to the Peterbilt that day.  The trailer was not a motor vehicle or separately insured.

Mr. Dove testified in his deposition that he had already taken one load of nine Jersey barriers to the maintenance yard that day using his Peterbilt and flatbed trailer.  His affidavit explains that the right lane and shoulder of the southbound lanes of Pennsylvania Avenue were closed to traffic because of the work, and the worksite was set off by traffic cones and warning signs. (ECF No. 45-6).  He pulled into this area to allow a crane to load

---

[1] Both the AMCO and Great West policies include "underinsured" within the definition of "uninsured motor vehicle." "[U]nderinsured" in turn is defined as those who satisfy the minimum insurance requirements under Maryland law but at a sum less than the limit of insurance. (*See* ECF Nos. 45-4, at 31 and 45-5, at 36).  "UIM coverage" will therefore refer to coverage for bodily injuries caused by an accident with either an underinsured or an uninsured motorist.

his truck a second time with another nine barriers, "three abreast." This loading process took around twenty to twenty-five minutes. Mr. Dove said that, afterward, he drove the tractor-trailer forward about 140 feet on the right shoulder and began to "secure the load." This secondary process, he reports, usually took around ten to fifteen minutes and involved loosening and throwing two straps over each set of three barriers, which were then secured on either side of the trailer and tightened using a "winch."

Just before the accident, Mr. Dove was outside his trailer in his "worker reflective vest" and had loosened and thrown three straps over the barriers. He had trouble loosening a fourth, however, which required him to walk back to edge of the trailer bed to retrieve his "winch bar." On his way toward the bar, walking toward the front of the tractor-trailer, the car driven by Ms. Thompson struck his trailer and either bounced or turned to the left where she struck Mr. Dove. He reports being two to three feet from the left side of the trailer and between twenty-seven to thirty-three feet from the "cab" of the tractor when struck. The Dump Truck insured by AMCO, on the other hand, was parked in a commercial parking spot rented by Mr. Dove, miles away, reported as 1480 Clopper Road, Boyds, Maryland 20841 (ECF No. 45-3, at 19).

Nevertheless, Mr. Dove sought coverage for his bodily injury under the AMCO policy's UIM coverage (ECF No. 45-5, at 33), and

not under the Great West Policy's UIM policy.  (ECF No. 45-4, at 28).  AMCO denied the claim on October 23, 2018, concluding that Mr. Dove was "occupying" the 2009 Peterbilt when the accident occurred and was therefore barred from coverage under the contract's "owned-but-otherwise insured" exclusion.  (ECF No. 46-3) (citing ECF No. 45-5, at 34).

On September 10, 2019, Mr. Dove brought suit in the Circuit Court for Prince George's County against both AMCO and Great West.[2] He claimed a breach of contract under both companies' UIM coverage and requested relief "in excess" of $75,000 from each.  He also sought a declaration that he was covered under *either* policy and an additional $50,000 under the Maryland Uniform Declaratory Judgments Act.  (ECF No. 10).  On October 15, 2019, AMCO removed the action based on diversity jurisdiction.  (ECF No. 1).  On December 5, 2019, Mr. Dove filed a notice of voluntary dismissal of Great West as Defendant which was approved that day.  An initial scheduling order was also issued.  (ECF Nos. 22 and 23).

On December 10, AMCO filed a motion for leave to file a third-party complaint against Great West.  (ECF No. 26).  Two days later, AMCO was notified that its motion required attachment of the proposed complaint itself.   That same day, AMCO filed a counterclaim against Mr. Dove seeking a declaratory judgment that

---

[2] Mr. Dove concedes that he improperly labeled it "Great Western Casualty Company" in his original complaint.

AMCO "has no duty to cover Edward Dove under its uninsured motorist coverage for the alleged bodily injury incurred in the Accident." (ECF No. 28).   On December 16, AMCO re-filed a third-party complaint that attached a proposed complaint (ECF No. 30), and Mr. Dove filed an amended complaint solely against AMCO that removed all allegations concerning Great West.  (ECF No. 31).  All parties filed a stipulation of non-participation explaining that Great West agreed to remain a party to the action and to bind itself to final judgment on the matter but would not be required to file a response or otherwise participate in the litigation.   (ECF No. 40).[3]   On March 13, 2020, the motion for leave to file a third-party complaint was approved, and a new discovery schedule was set (ECF No. 42).

AMCO filed a motion for summary judgment arguing that it is entitled to a declaration that "there is no coverage available for the losses alleged in this action under the AMCO uninsured motorist policy."   (ECF No. 45).   Plaintiff responded with an opposition and a cross-motion for summary judgment, seeking a declaration in his favor.   He argues that "there is no dispute of material fact

---

[3] The stipulation also notes that Great West and Plaintiff have reached a private and confidential settlement agreement, even though Great West continues to dispute any liability under its policy.  (ECF No. 40, ¶ 7).  Thus, the portion of AMCO's counter- and third-party claim seeking a declaration concerning the ongoing duty that Great West owes Plaintiff is moot.  (*See* ECF No. 30-1, at 5).

that Mr. Dove is entitled UIM coverage [from AMCO] as a matter of law."  (ECF No. 46).  On October 7, 2020, AMCO filed its reply. (ECF No. 47).

## II.  Standard of Review

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "the judge must ask [her]self not whether [s]he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.  When the parties file cross motions, each motion must be reviewed "separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'"  *Rossignol v. Voorhar*, 316 F.3s 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir. 1997)).

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citing *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998) and *Beale v.*

*Hardy*, 769 F.2d 213, 214 (4ᵗʰ Cir. 1985)).   The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.  If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . which that party will bear the burden of proof at trial[,]" there can be no "genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.

## III. Analysis

Whether AMCO is liable for insurance coverage for Mr. Dove's accident comes down to a single question: was he "occupying" his 2009 Peterbilt Tractor Style F truck (the "Peterbilt") at the time as contemplated in the "owned-but-otherwise-insured" exclusion clause of his AMCO insurance policy and under Maryland law.

The AMCO coverage allows the named "insured" to recover damages for "bodily injury" that results from "the ownership, maintenance or use of the 'uninsured motor vehicle.'"  (ECF No. 45-5, at 33, Section A.1).[4]  The policy has an explicit exclusion

---

[4] The endorsement provides UIM for the named insured as well as "anyone else 'occupying' a covered 'auto.'" Section B.1.a. and b. (ECF No. 45-5, at 33).

that states, "This insurance does not apply to any of the following

. . . 'Bodily injury' sustained by: a. An individual Named Insured

while 'occupying' . . . any vehicle owned by that Named Insured

that is not a covered 'auto' for Uninsured Motorists Coverage under

this Coverage Form."  (*Id.*, at 34, Section C.3.a).   In turn, the

definitional section defines "Occupying" as "in, upon, getting in,

on, out or off."  (*Id.*, at 35, Section F.2).  Neither side disputes

that the accident involved an uninsured motor vehicle or that Mr.

Dove is the named insured of the AMCO policy and its UIM coverage.[5]

Thus, the dispute revolves entirely around whether Mr. Dove was

"occupying" his Peterbilt at the time he was struck.

AMCO argues that the term "occupying" in the context of UIM

coverage has been construed broadly by Maryland courts, as this

generally effectuates the policy goals of Maryland UIM law.  (*See*

ECF No. 45-1, at 9 & n.44) (citing *Young v. Allstate Ins. Co.*, 120

Md.App. 216, 234 (1998)) ("the primary purpose of uninsured

motorist insurance is to assure financial compensation to the

innocent victims of motor vehicle accidents who are unable to

recover from financially irresponsible uninsured motorists.")

(internal quotation marks omitted).  It argues that this standard

must be applied whether to grant or bar coverage as words should

---

[5] AMCO says Ms. Thompson was "underinsured" (ECF No. 45-1, at
1), while Mr. Dove clarifies that she had "only minimum mandatory
Maryland liability limits."  (ECF No. 46-1, at 3).

be given a uniform meaning.   AMCO points to two tests that have been utilized in Maryland — the "intended use" test[6] and the broader "reasonable connections" test[7] — and argues that Mr. Dove was "occupying" his tractor during the accident under either test.

In response and in his own motion for summary judgment, Mr. Dove argues that Maryland courts have construed exclusion clauses narrowly "in favor of a finding of coverage," which favors granting so-called "occupancy clauses" their plain meaning in this context.[8] He also argues that the *Gorham* decision, relied on in part by AMCO, is an outlier and not binding precedent.   This and cases from other jurisdictions "broadly construe the relevant clause in order to *provide* uninsured motorist coverage to innocent victims, not *exclude* it"; only then, Mr. Dove argues, is such a construction "consistent with the remedial purpose of the uninsured motorist statute." (ECF No. 46-1, at 16) (quoting *Young*, 120 Md. App. at

---

[6] (ECF No. 45-1, at 9-10) (citing *Goodwin v. Lumbermens Mut. Cas. Co.,* 199 Md. 121, 131 (1952) and *Maryland Auto. Ins. Fund v. Baxter*, 186 Md.App. 147, 156 (2009) (focusing "upon whether the person claiming benefits was performing an act (or acts) . . . normally associated with the immediate 'use' of the auto")).

[7] (*Id.*, at 10) (citing *Gorham v. Guidant Mut. Ins. Co.*, 80 F. Supp.2d 540, 542-543 (D.Md. 2000) (applying a five-factor test which looks at the overall relationship the claimant has with the vehicle at the time of the accident)).

[8] (ECF No. 46-1, at 11-15) (citing *Young v. Allstate*, 120 Md. App. 219, 224, 235 (1998) (finding a trial court erred in excluding coverage as the appellant was not "in, on, getting into, or out of" a vehicle as he checked the already locked doors in order to proceed to lunch)).

231-32) (underlining omitted).  Mr. Dove argues that he is entitled
to coverage under "AMCO's UIM endorsement" as a "Named Insured,"
and, therefore, summary judgment should be entered in his favor
and AMCO's motion denied.

This is not a particularly close case.  Mr. Dove had driven
the Peterbilt with the newly loaded Jersey barriers, got out only
to  secure  the  load  properly  for  continued  movement,  and  was
securing  the  load  on  the  trailer  so  that  he  could  drive  the
Peterbilt to its destination when the accident occurred.  These
circumstances satisfy all reasonable definitions of the component
parts of the term "occupying."

The policy defines "occupying" as "in, upon, getting in, on,
out or off."   The  term  occupying  both  includes,  in  the  section
defining  who  is  an  insured,  and  excludes  in  the  "owned  but
uninsured" exclusion. (*See* ECF No. 45-5, at 33-35).  To read the
word narrowly within the exclusion only would lead to an absurd
result: "occupying" would mean two different things under AMCO's
UIM coverage even though both provisions share a single definition.
Cases  construing  the  terms  do  not,  ultimately,  help  Mr.  Dove
either.

In *Baxter*,  for  example,  the  Court  of  Special  Appeals  of
Maryland   analyzed   how   to   apply   "occupying"   when   it   was
contractually defined as "in or upon or entering into or alighting

from."  The court identified a split among jurisdictions in dealing

with similarly defined terms:

> Among those jurisdictions which have
> resolved the issue, there seems to be two
> basic approaches to interpreting the
> definition of "occupying".  The first is the
> strict literal approach whereby a person
> cannot be "occupying" a vehicle unless he, or
> part of him is inside or in physical contact
> with the vehicle.  The second approach,
> focuses upon whether the person claiming
> benefits was performing an act (or acts) which
> is (are) normally associated with the
> immediate "use" of the auto . . . . We believe
> that the second approach represents the better
> view, for it is most consistent with the
> Uninsured Motorist Act.

*Baxter*, 186 Md.App. at 155 (quoting *Utica Mutual Ins. Co., v.*

*Contrisciane*, 504 Pa. 328, 334-35 (1984) (internal citations

omitted) (collecting cases)).  In *Baxter*, the Court of Special

Appeals held that a pedestrian struck and killed by a vehicle (who

had no prior connection with the insured vehicle) was not "upon"

that vehicle.  *Baxter* has nothing to say directly about this case

— neither party suggests that Mr. Dove was occupying the vehicle

that struck him.  The court did, though, helpfully state some

general guideposts: "Maryland is among the jurisdictions that

utilize the [second] approach that focuses upon whether, at the

time of the accident, the claimant was performing an act or acts

normally associated with the immediate use of the automobile.  See,

*Goodwin* . . . "  *Id*. at 156.

11

In *Goodwin*, the Court of Appeals of Maryland construed what was at the time a fairly new provision providing coverage for a person injured "while in or upon, entering or alighting from the vehicle."  A group of women had been approaching a car to enter it.  One had unlocked a front door and was reaching in to unlock the rear door.  Another had her hand on the handle of the rear door.  The court found that all were in the process of "getting in" and thus were entering the vehicle.  *Goodwin*, 199 Md. at 131.

*Young* subsequently made clear that occupancy clauses cannot be read as *only* pertaining to individuals in "physical contact" with the insured vehicle.  *See* 120 Md.App. at 234 (quoting *Sentry Ins. Co. v. Providence Wash. Ins. Co.*, 91 Wis.2d 457 (App. 1979)) ("[t]he Wisconsin Supreme Court has never required that a defendant have physical contact with an automobile before that person can be termed an 'occupant' . . . . [A] person has not ceased 'occupying' a vehicle until he has severed his connection with it").  The court rejected a "bright-line construction," however, as the proper application of such a clause needs to be analyzed on a "case-by-case basis," depending on the facts and public policy.  *Id.*

In *Young*, an injured person sued his own insurance company for UIM coverage.  He had been driving his employer's truck when he stopped for lunch.  After parking the vehicle, he went to the rear to check the padlock on the rear doors, intending to go to a restaurant nearby.  While standing approximately ten inches from

the rear bumper, he heard the squealing of a car making a sudden
U-turn, turned away from the truck, and he was hit.  Although the
appellate court disagreed with the legal analysis of the lower
court (applying an exclusion for a vehicle furnished for regular
use by its owner), it nevertheless interpreted the phrase "in, on,
getting into or out of" an auto for which coverage was provided.
The court noted that interpretations, whether broad or narrow,
might be affected by whether the clause was being construed to
provide UIM or to exclude it.  "In other words, the courts were
promulgating the remedial purpose of the uninsured motorist
statute."  *Id.* at 231.  The court concluded that the insured was
no longer getting out of the truck.

    *Gorham* was decided after *Goodwin* and *Young*, but before *Baxter*,
and espoused a test borrowed, in part, from a Tennessee court and
the Pennsylvania court later relied on by *Baxter.* Judge Davis
decided that, in "applying occupancy clauses to the infinite number
of scenarios which arise in modern life," courts should consider:

> (1) whether there is a causal relation or
> connection between the injury and the use of
> the insured vehicle;
>
> (2) whether at the time of the encounter with
> the uninsured motorist, and regardless of
> whether the claimant was in actual physical
> contact with the insured vehicle, the person
> seeking coverage was in reasonably close
> geographic and temporal proximity to the
> insured vehicle;

> (3) whether the claimant was "vehicle-oriented" rather than highway- or sidewalk-oriented at the time of the accident;
>
> (4) whether the claimant was engaged in a transaction essential to the use of the insured vehicle at the time of the encounter with the uninsured motorist; and
>
> (5) whether, within "rational limits" dictated by the facts of the case, the claimant intended to initiate or maintain "a certain relationship with the insured car at the time of the accident."

*Gorham,* 80 F.Supp.2d at 546 (citing *Tata v. Nichols*, 848 S.W.2d 649 (Tenn. 1993) and *Utica*, 504 Pa. 328)). The court there found a woman was "occupying" or "getting in" an insured church van which she was preparing to drive when she returned to another vehicle to retrieve a backpack containing her eyeglasses. She was standing at the door of the other vehicle, but "near" the church van when she was struck by a motorist. *Id.* at 543.

Mr. Dove is correct that *Gorham* is not binding authority as its five-part test has not been subsequently cited by a Maryland appellate court. But neither has it received *any* negative treatment from the Maryland courts or otherwise and thus remains a persuasive reading of Maryland law.

It also helps to highlight the central and important fact that Mr. Dove had been, and intended to continue, using his Peterbilt to haul the trailer and these barriers throughout the day of the accident. The accident and the injuries inflicted on

Mr. Dove were intimately bound-up in this work: it was why he on
the side of the road at the time and so close to his tractor-
trailer.  He was assuredly more "vehicle-oriented" than connected
in any meaningful way to the *particular* section of the
worksite/road on which he stopped.  Moreover, to read the occupying
clause here to not apply to Mr. Dove would lead to an absurd
result; it would allow him to make a personal injury claim under
the coverage for a vehicle sitting unused and miles away,[9] instead
of the coverage for a vehicle he had just used to move barriers,
a tractor which was connected to a trailer bed on which he was
actively working, and which he intended to use only minutes later.

The type of exclusionary clause at issue in this case has
been found under Maryland law to be wholly "consistent with
Maryland's UIM statute."  (ECF No. 45-1, at 8) (quoting *Powell v.
State Farm Ins. Co.,* 86 Md.App. 98, 108, 110 (1991) and citing
*GEICO v. Comer*, 419 Md. 89, 99-100 (2011) (reaffirming the holding
of *Powell*)).  In fact, the most recent iteration of the law has a
specific provision allowing for this type of exclusion.  Md.Code
Ann., Ins. § 19-509(f).  In referring specifically to the kind of
"owned-but-otherwise insured exclusion" contained in AMCO's UIM
policy, *Powell* stated:

---

[9] Seemingly to avoid highlighting this fact, the Dump Truck
is not mentioned a single time in Mr. Dove's motion for summary
judgment.

>To permit such an exclusion will encourage
families to obtain coverage for *all* of their
vehicles and thus maximize compliance with the
purpose of the statute.
>* * *
>To hold as appellant also urges, *i.e.,* that
his wife's vehicle was not *uninsured* because
it was covered under another policy, would be
to permit an owner to buy excess coverage
under one policy for one vehicle at a
relatively small premium and coverage under a
separate policy for his other vehicles at a
lesser cost, and have the excess coverage of
the first policy apply to the vehicles covered
under the subsequent policies.

As this passage explains, the *Powell* court sought consciously to avoid allowing car owners to purchase excess insurance coverage on a single vehicle in order to avoid having to buy anything but minimal coverage on their other vehicles. *Young* ultimately distinguished and refused to apply *Powell* because the appellant did not own the vehicle, but rather the vehicle was provided for his use by a third-party: his employer. 120 Md. App. at 230 (finding the scenario did not fit within the "permitted exclusions" recognized by *Powell* and others).

Mr. Dove, on the other hand, has attempted to do exactly what *Powell* sought to avoid. He purchased insurance from Great West to cover his Peterbilt for UIM limits of $75,000. He had an opportunity to select instead a $1,000,000 limit for this portion of the policy, but declined. Conversely, the AMCO policy only covered his Dump Truck and the premiums paid for its excess coverage were based on an assumption of "his or her owning only

16

one vehicle" (as evidenced by the exclusion and the policy itself). (ECF No. 45-1, at 7) (citing Andrew Janquitto, *Maryland Motor Vehicle Insurance*, 21 U. Balt.L.Rev. 171, 240, 243-45 (1992)); (ECF No. 45-5, at 19) (listing only the "1995 FORD" under the "Schedule of Covered Autos You Own").  On the day in question, moreover, this Dump Truck was over forty miles away from the scene of the accident.  Instead, Mr. Dove was using his Peterbilt throughout the day, including immediately before the accident, and was, in fact, standing next to it and preparing to drive it again as soon as he secured the last strap, when he was struck.

He requests that such details be ignored, however, and demands a right to use the superior coverage, for which he did not pay a premium to extend UIM coverage to the tractor, based solely on a narrow reading of the word "occupy," and one that entirely ignores the well-recognized purpose behind enforcement of "owned-but-otherwise insured" exclusions.

Furthermore, barring Mr. Dove from using his AMCO policy in this instance does not leave him without coverage, as denying coverage would in other cases.  Instead it only requires him to use the lesser coverage of the vehicle he was "occupying" at the time, as opposed to one that was miles away.[10]

---

[10] The Great West policy provides coverage for Mr. Dove as the named insured, as well as for other persons "occupying" a covered "auto."  Under its UIM coverage, "Occupying" is defined as "in, upon, getting in, on, out or off."  (ECF No. 45-4, at 31).

17

Summary Judgment for AMCO will be granted and judgment entered in its favor.  No coverage is available for the losses alleged in this complaint under the AMCO UIM policy held by Mr. Dove.  This moots any consideration of a priority of coverage as between Great West and AMCO.

## IV.  Conclusion

For the foregoing reasons, AMCO's motion for summary judgment will be granted.  Its crossclaim against Great West will be dismissed as moot in light of the private settlement agreement entered into between Great West and Plaintiff.  Mr. Dove's motion for summary judgment will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

Interestingly, the policy's separate "Personal Injury Protection" uses the word in its inclusions and exclusions as well, but defines it instead as "in or upon or entering into or alighting from." (ECF No. 45-4, at 24-27).